IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMEERA SHAHEED and EARL DICKERSON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| CITY OF WILMINGTON, FIRST STATE TOWING, LLC and CITY TOWING SERVICES, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT FOR PROSPECTIVE, RETROSPECTIVE, AND EQUITABLE RELIEF**

**Introduction**

1.     This is a constitutional lawsuit against the City of Wilmington and two private towing companies (together, "Defendants") for wrongfully taking people's cars and using them to fund the City's impound system. Because all three Defendants acted under color of state law when they confiscated these cars, Defendants are sued together under 42 U.S.C. § 1983.

2.     Wilmington hired private towing companies to run its municipal impound system. However, in lieu of monetary payment, the City contractually empowered the private towing companies to keep and scrap people's cars. As a result, the towing companies scrapped thousands of cars without compensating owners. In the end, the City gets its municipal impound program for free, the towing companies make money by confiscating a large portion of the cars they tow, and vehicle owners lose their cars.

3.     Wilmington ticketed Ameera Shaheed's legally parked car six times in nine days. Then, while her appeal of the tickets was pending, Defendants towed her car and refused to release

1

it unless she paid the city $320. When Ameera couldn't afford to do so within thirty days, Defendants scrapped her car and kept the entire value for themselves, even though the car's value far exceeded the alleged ticket debt. Outrageously, Defendants didn't even credit the value towards her parking tickets or compensate her for the loss. So Ameera lost her car and still owes $320. Because the City claims she still owes the same parking tickets, Ameera cannot even try to get another car because Defendants would tow, impound, and scrap that one too.

4.      Earl Dickerson didn't move his car from its parking spot in time, so Defendants towed it. Earl paid the resulting ticket, but Defendants still refused to release his vehicle unless Earl paid an additional $910 that he absolutely did not owe. Because he couldn't afford to pay the ransom, Defendants scrapped Earl's car and kept the entire value for themselves.

5.      Ameera and Earl are not alone. In 2020, the City and its contractor towed 2,551 cars and kept 987 of them—more than thirty-eight percent. That is how Wilmington pays for its tow-and-impound program. But, as described in detail below, its system is fundamentally unconstitutional.

## Jurisdiction and Venue

6.      This is a civil rights case brought under 42 U.S.C. §§ 1983, 1988 and the Fourteenth Amendment to the United States Constitution.

7.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

8.      Venue is proper in this Court under 28 U.S.C. § 1391.

## Parties

9.      Plaintiff Ameera Shaheed is an adult citizen of the United States and a resident of Wilmington, Delaware.

10.     Plaintiff Earl Dickerson is an adult citizen of the United States and a resident of Wilmington, Delaware.

11.     Defendant The City of Wilmington (also "Wilmington" or the "City") is a municipal corporation and body politic incorporated in the State of Delaware.

12.     Defendant First State Towing, LLC ("First State Towing") is a Delaware limited liability company registered in Wilmington. The City contracted with Defendant First State Towing to run its municipal impound program from December 1, 2018 through November 30, 2019. Defendant First State Towing acted under color of state law. Defendant First State Towing towed, impounded, and scrapped Plaintiff Shaheed's car.

13.     Defendant City Towing Services, LLC ("City Towing") is a Delaware limited liability company registered in Wilmington. The City contracted with Defendant City Towing to run its municipal impound program starting on December 1, 2019, and Defendant City Towing is the City's current towing contractor. Defendant City Towing acted under color of state law. Defendant City Towing towed, impounded, and scrapped Plaintiff Dickerson's car.

<u>**Factual Allegations**</u>

***Wilmington's Impound-and-Scrap Scheme***

14.     Defendant Wilmington's ordinances impose monetary fines upon vehicle owners for parking violations.

15.     In order to extract payment of these monetary fines, Defendant Wilmington's ordinances provide that any publicly parked car whose owner has $200 or more in outstanding ticket debt is subject to being towed and impounded. Wilmington Del. Code § 37-125(a).

16.     Once a vehicle is towed and impounded, Defendant Wilmington's ordinances provide that the vehicle shall not be returned to its owner unless and until the full amount of the vehicle owner's ticket debt (plus other outstanding fees and penalties) has been paid. Wilmington Del. Code § 37-131.

17.     Defendant Wilmington does not run its own tow-and-impound system.

18.     Instead, Defendant Wilmington outsources this governmental function to private towing companies.

19.     Defendant Wilmington does not pay the private towing companies to run its municipal tow-and-impound system.

20.     Rather, Defendant Wilmington contractually empowers the towing companies to sell, scrap, keep, or otherwise dispose of other people's cars.

21.     Specifically, Defendant Wilmington created a form tow-and-impound contract and opened it up for public bids.

22.     That contract included a clause that authorized the towing company to sell, scrap, keep, or otherwise dispose of vehicles that remained on the contractor's impound lot for more than thirty days.

23.     Wilmington allows the towing companies to retain all proceeds when they sell, scrap, keep, or otherwise dispose of vehicles.

24.     In other words, under Defendant Wilmington's form tow-and-impound contract, a vehicle owner has only thirty days to pay the ticket debt allegedly owed to the City. If the vehicle owner cannot pay that amount within thirty days, then Defendant Wilmington's form tow-and-impound contract authorizes the tow company to sell, scrap, keep, or otherwise dispose of the vehicle forever.

4

25.     In order to find towing contractors, Defendant Wilmington created a proposal form and instructed bidders that the only two criteria they could bid on were: (1) cost per tow; and (2) the per-day storage fee. These fees are to be charged to the vehicle owner, not the City.

26.     Thus, under the City's form contract and proposal, the City provided that towing contractors were to operate the City's tow-and-impound system at no cost to the City.

27.     For December 1, 2018 through November 30, 2019, Defendant First State Towing bid zero dollars ($0) per-tow and $10 per-day storage fee, and it was awarded the contract. The contract was signed by Wilmington's Mayor.

28.     For December 1, 2019 through November 30, 2020, Defendant City Towing bid one penny ($0.01) per-tow and zero dollars ($0) per-day storage fee, and it was awarded the contract. The contract was signed by Wilmington's Mayor.

29.     In November 2020, Defendant City Towing's contract with Defendant Wilmington was renewed for an additional year on the same terms. The renewal thrice stated that the City's cost for Defendant City Towing's services was zero dollars ($0). The renewal was passed as an ordinance by Wilmington's City Council, signed by the president of the City Council, and signed by Wilmington's Mayor.

30.     By structuring its contract in this way, and then accepting zero-dollar ($0) bids, Defendant Wilmington created an obvious incentive problem: the only way for its private contractors to make money was to sell, scrap, keep, or otherwise dispose of the cars that they towed.

31.     That is exactly what happened.

32.     For example, in 2020 alone, Defendant City Towing sold, scraped, kept, or otherwise disposed of at least 987 out of the 2,551 cars it towed.

33. Defendant Wilmington instructs Defendant towing companies on which cars to seize and on which cars they should release from impound.

34. Under the terms of their contracts, City officials—such as Wilmington's parking "scofflaw enforcers," Wilmington Del. Code § 37-125—identify which vehicles are to be towed and direct Defendant towing companies to tow them. Similarly, Defendant Wilmington issues an official release form directing Defendant towing companies which cars to release and when.

35. Defendants do not obtain a warrant prior to seizing cars to secure payment of alleged parking ticket debt.

36. Defendants do not provide vehicle owners with pre-seizure notice or with an opportunity to be heard before seizing cars to secure payment of alleged parking ticket debt.

37. Further, Defendants do not provide any post-seizure hearing unless the vehicle owner pays the City's financial demand up front, under protest.

38. Defendants do not otherwise provide a post-seizure hearing where vehicle owners can contest the validity or amount of the fees that Defendants demand to release a seized car.

39. If an owner cannot pay Defendants' full demand, they cannot reclaim their car and cannot avoid losing it permanently.

40. Upon information and belief, in most instances Defendants First State Towing and City Towing scrapped and retained the full value of the cars that they kept.

41. When its contractors sold, scrapped, kept, or otherwise disposed of someone's car, Defendant Wilmington did not even credit the value of the car towards the owner's alleged parking ticket debt.

42. Additionally, when its contractors sold, scrapped, kept, or otherwise disposed of someone's car, Defendant Wilmington did not return any surplus value to the owner.

6

43.     In short, under its program, Defendant Wilmington paid for its municipal tow-and-impound program by giving its contractors people's cars.

***Ameera Shaheed***

44.     Plaintiff Ameera Shaheed is a long-time resident of Wilmington and has lived on the 400 block of Rodney Street North for almost fifteen years.

45.     Plaintiff Shaheed is a grandmother of three. Unfortunately, she is now disabled and survives on $852 per month from Social Security Disability Insurance Benefits. Because of her disability, it is very difficult to get around without a car.

46.     In the nine days between September 9, 2019 and September 17, 2019, Plaintiff Shaheed received six parking tickets while parked in a legal spot across from her home.

47.     Defendant Wilmington ticketed Plaintiff Shaheed's legally parked car on September 9, 10, 11, 12, 13, and 17, 2019.

48.     Over those nine days, the City issued Plaintiff Shaheed more than $200 in parking tickets—the threshold over which Defendants tow legally parked cars. Wilmington Del. Code § 37-125(a).

49.     Believing she was legally parked, Plaintiff Shaheed timely appealed her tickets.

50.     While her appeal was pending, Defendant Wilmington instructed Defendant First State Towing to tow and impound Plaintiff Shaheed's car.

51.     Defendant First State Towing towed and impounded Plaintiff Shaheed's car on October 30, 2019.

52.     Defendants did not provide Plaintiff Shaheed with pre-deprivation notice or with an opportunity to be heard before towing her car.

53.     Had Defendants provided Plaintiff Shaheed with pre-deprivation notice and an opportunity to be heard, Plaintiff Shaheed could have argued that the underlying parking tickets were still under appeal and that her tickets were invalid. She also could have argued an inability to pay the City's financial demand.

54.     Plaintiff Shaheed likely would have been successful on these, or other, arguments.

55.     Defendants did not obtain a warrant authorizing them to tow Plaintiff Shaheed's car.

56.     If Defendants had been required to obtain a warrant before towing Plaintiff Shaheed's vehicle, the judge issuing the warrant would have had the opportunity to decline to issue a warrant (and most likely would have declined to issue a warrant) because Plaintiff Shaheed was in the midst of appealing the underlying parking tickets.

57.     Plaintiff Shaheed's car was legally parked when it was towed.

58.     Plaintiff Shaheed's car was safely parked when it was towed.

59.     Plaintiff Shaheed's car had not been involved in a traffic accident when it was towed.

60.     Plaintiff Shaheed's car was not interfering with the flow of traffic when it was towed.

61.     There were no exigent circumstances that led Defendants Wilmington and First State Towing to tow Plaintiff Shaheed's car.

62.     Defendants Wilmington and First State Towing towed Plaintiff Shaheed's car solely to secure payment of her alleged parking ticket debt.

63.     Defendants Wilmington and First State Towing impounded and refused to release Plaintiff Shaheed's car unless and until she paid the full sum that Defendant Wilmington claimed for the six parking tickets it issued, as well as additional fees.

64.     Upon information and belief, Defendants Wilmington and First State Towing demanded $320 from Plaintiff Shaheed to reclaim her car.

65.     As someone living on less than $900 per month, Plaintiff Shaheed simply could not afford to pay the amount demanded for her alleged parking ticket debt in order to reclaim her car.

66.     Because Plaintiff Shaheed could not pay the full sum demanded, her car remained impounded for thirty days or more.

67.     Because Plaintiff Shaheed could not pay the full sum demanded within thirty days, and her car therefore remained impounded, Defendant First State Towing kept, and ultimately scrapped, her car.

68.     Defendants failed to provide Plaintiff Shaheed with a post-deprivation hearing that would have allowed her to reclaim her car without paying Wilmington's demand.

69.     Had Defendants provided Plaintiff Shaheed with a post-deprivation hearing, she could have argued, for example, that she could not afford to pay the City's financial demands, that her car should not have been towed as the underlying tickets were under appeal, or that the tickets were invalid.

70.     Plaintiff Shaheed likely would have been successful on these, or other, arguments.

71.     Defendant First State Towing scrapped Plaintiff Shaheed's car based upon the authority that Defendant Wilmington contractually granted it.

72.     Plaintiff Shaheed owned a 2005 Hyundai XG350.

9

73.     According to CarFax, the current retail value of Plaintiff Shaheed's former car is approximately $4,250.

74.     When Defendant First State Towing scrapped Plaintiff Shaheed's car, it kept the entire value for itself.

75.     Defendants Wilmington and First State Towing did not even credit the retail value of Plaintiff Shaheed's car towards her alleged parking ticket debt.

76.     Even had Defendants Wilmington and First State Towing sold, scrapped, kept, or otherwise disposed of Plaintiff's Shaheed's $4,250 car to satisfy her $320 alleged parking ticket debt, there would have been a $3,930 surplus value.

77.     Defendants Wilmington and First State Towing did not return any surplus value to Plaintiff Shaheed.

78.     In fact, despite taking Plaintiff Shaheed's car, Defendant Wilmington still claims that she owes the City payment on the same underlying six parking tickets. Defendant Wilmington continues to add additional penalties and now claims that Plaintiff Shaheed owes $580 for the tickets.

79.     What is more, Defendant Wilmington has authorized debt collection action against Plaintiff Shaheed based upon one of the underlying parking tickets that caused Defendants Wilmington and First State Towing to tow, impound, and scrap Plaintiff Shaheed's car in the first place.

80.     Because Defendant Wilmington still claims that Plaintiff Shaheed owes it more than $200 for the same parking tickets, Defendants today can and would tow any publicly parked car registered to Plaintiff Shaheed.

81.     Therefore, Plaintiff Shaheed cannot even get another car because Defendants would immediately tow, impound, and scrap it.

82.     Effectively, Plaintiff Shaheed is barred from even trying to get another car, as Defendants would immediately tow it because of the same alleged parking ticket debt.

***Earl Dickerson***

83.     Plaintiff Earl Dickerson is a 73-year-old grandfather.

84.     Plaintiff Dickerson is now retired from his job as a graphic designer and lives on a fixed income.

85.     Plaintiff Dickerson struggled during the pandemic and could not afford to drive his car frequently.

86.     So Plaintiff Dickerson left his car legally parked on his street and did not move it for an extended period of time.

87.     However, Plaintiff Dickerson did make sure that his car remained registered and insured throughout the relevant period.

88.     In April 2021, Defendant Wilmington ticketed Plaintiff Dickerson's car and indicated that the car needed to be moved within seven days or it would be towed.

89.     However, Plaintiff Dickerson was dealing with the death of one of his grandchildren about a month prior, and he did not move his car within seven days from the ticket.

90.     Therefore, on April 19, 2021, Defendants Wilmington instructed City Towing to tow Plaintiff Dickerson's car.

91.     Defendant City Towing sent Plaintiff Dickerson a letter dated April 19, 2021, indicating that it had impounded Plaintiff Dickerson's car and that he must pay all outstanding fines and fees attached to the vehicle to secure its release.

92.   Defendant City Towing's April 19, 2021 letter also explained that it was authorized to charge zero dollars ($0) per day in storage fees.

93.   The letter also stated that Plaintiff Dickerson must pay the outstanding fines "within thirty (30) calendar days of receipt of this notice, otherwise [he] will accumulate additional charges and [he] may ultimately forfeit ownership of [his] vehicle."

94.   On or about April 22, 2021, Plaintiff Dickerson paid Defendant Wilmington the $60 ticket that he received for failing to move his car in time as well as an additional $25 impound release fee.

95.   That was the extent of the fines, fees, or penalties to which Defendants were entitled, and Plaintiff Dickerson should have been permitted to reclaim his vehicle.

96.   Thereafter, on or about May 6, 2021—well before the thirty-day deadline—Plaintiff Dickerson contacted Defendant City Towing's to try to reclaim his car.

97.   Defendant City Towing demanded an additional $910 dollars to release Plaintiff Dickerson's car.

98.   Defendant City Towing did not provide a written explanation as to why it claimed to be entitled to an additional $910.

99.   Upon information and belief, Defendant Wilmington and Defendant City Towing wrongly maintain that Defendant City Towing was authorized to charge a $65 per-day storage fee beginning on the fifth day after a vehicle was towed.

100.  Contrary to Defendant Wilmington and Defendant City Towing's fee representations, the express terms of their public-bid contract do not allow Defendant City Towing to charge storage fees. Or to be more specific, Defendant City Towing is authorized to charge zero dollars ($0) per day for storage.

12

101.    Therefore, Defendant Wilmington wrongly permits and endorses Defendant City Towing's $65 per-day storage fee.

102.    In the alternative, Defendant Wilmington fails to supervise Defendant City Towing to ensure that it doesn't abuse its power and extract additional fees from vehicle owners or the public.

103.    Defendant City Towing is only able to demand additional fees from vehicle owners because Defendant Wilmington granted them the governmental power to seize vehicles and sell, scrap, keep, or otherwise dispose of them.

104.    In any event, Defendant City Towing demanded $910 from Plaintiff Dickerson who could not afford to pay to reclaim his vehicle.

105.    Because Plaintiff Dickerson did not pay the $910 demand, Defendant City Towing refused to release Plaintiff Dickerson's car.

106.    After refusing to release Plaintiff Dickerson's car for at least thirty days, Defendant City Towing scrapped Plaintiff Dickerson's car.

107.    Defendants failed to provide Plaintiff Dickerson with a post-deprivation hearing that would have allowed him to try to reclaim his car without paying the $910 demand.

108.    Had Defendants provided Plaintiff Dickerson with a post-deprivation hearing, he could have argued, for example, that the $910 demand was invalid, or that he could not afford to pay Defendants' demand.

109.    Plaintiff Dickerson likely would have been successful on these, or other, arguments.

110.    After scrapping it, Defendant City Towing kept the entire value of Plaintiff Dickerson's car.

111.    Plaintiff Dickerson's vehicle was worth more than $910. As of filing, Kelly Blue Book considers a fair market price for his 2002 Dodge Ram 1500 Van to be somewhere between $2,750 and $4,834.

112.    Defendants Wilmington and City Towing did not return any surplus value to Plaintiff Dickerson.

113.    Plaintiff Dickerson has subsequently purchased a new car, and he regularly parks it on the street in the City of Wilmington. Plaintiff Dickerson therefore remains subject to the City of Wilmington's unlawful tow and impound scheme.

***Defendants Acted Under Color of State Law***

114.    Defendants First State Towing and City Towing acted under color of state law and are state actors for purposes of this civil rights lawsuit.

115.    Towing and/or impounding cars is a government function. Defendant Wilmington delegated that public function to Defendants First State Towing and City Towing.

116.    Defendant Wilmington contracted first with Defendant First State Towing, and then with Defendant City Towing to maintain its municipal towing-and-impound program.

117.    Defendant Wilmington instructed Defendant towing companies on which vehicles to tow.

118.    Defendant Wilmington instructed Defendant towing companies on which vehicles that they are supposed to release from impound.

119.    Defendants and their officers, agents, and employees worked closely together.

120.    Defendant Wilmington contractually authorized Defendant towing companies to sell, scrap, keep, or otherwise dispose of cars.

121.    Defendant Wilmington's parking ordinances expressly reference the fact that towing contractors run the City's impound program.

122.    In light of the foregoing, Defendant Wilmington caused Defendants First State Towing and City Towing to tow, impound, and sell, scrap, keep, or otherwise dispose of cars.

123.    In light of the foregoing, Defendants Wilmington, First State Towing, and City Towing participated in a joint activity, namely running Defendant Wilmington's municipal towing-and-impound program.

124.    In light of the foregoing, the actions of Defendants First State Towing and City Towing are pervasively entwined with the operations of Defendant Wilmington.

125.    In light of the foregoing, there is a close nexus between Defendant Wilmington and Defendants First State Towing and City Towing such that the conduct of the towing companies can be treated as that of the City.

126.    In light of the foregoing, Defendant Wilmington is responsible for Defendants First State Towing and City Towing's conduct, namely towing, impounding, and scrapping cars.

127.    Additionally, Defendants First State Towing and City Towing used the coercive power of the state to cause Plaintiffs' injuries. Specifically, absent governmental authorization, it is a crime to seize, keep, or destroy another person's property without their permission. Defendants First State Towing and City Towing could only seize, keep, or destroy Plaintiffs' vehicles because Defendant Wilmington authorized them to do so.

*Harm to Plaintiffs*

128.    But for Defendants' policies and practices described throughout this Complaint, Plaintiffs would not have been permanently deprived of their vehicles as well as the value thereof.

129.    As a result of Defendants' actions, policies, and practices, Plaintiff Shaheed's car was taken from her. Plaintiff Shaheed lost the use of her vehicle—and her means of transportation.

130.    Plaintiff Shaheed also suffered financial harms. She lost the value of her car and had to pay for other means of transportation, such as taxis, since October 30, 2019.

131.    Plaintiff Shaheed suffered through additional and needless physical pain since October 30, 2019, as she is disabled and getting around without a car is painful.

132.    Plaintiff Shaheed suffered through the difficulties and stress of not having her own means of transportation since October 30, 2019.

133.    Additionally, Plaintiff Shaheed continues to suffer severe and irreparable harm because she cannot even try to obtain a replacement car.

134.    Defendant Wilmington maintains that Plaintiff Shaheed still owes the City an ever-increasing amount—currently $580—for the same parking tickets that caused them to scrap her car in the first place. Because Defendants continue to tow, impound, and sell, scrap, keep, or otherwise dispose of cars when they believe the vehicle owner owes more than $200 in parking tickets, Plaintiff Shaheed cannot obtain a replacement car unless she first pays the City an additional $580.

135.    Having already taken her car, Defendants are nonetheless effectively barring Plaintiff Shaheed from obtaining another car unless she pays the City an additional $580.

136.    Plaintiff Shaheed could likely obtain, or finance, a replacement car for less than the City's $580 demand.

137.    Separately, as a result of Defendants' actions, policies, and practices, Plaintiff Dickerson's car was taken from him. As such, Plaintiff Dickerson lost the use of his vehicle—and his means of transportation.

138.    Defendant Dickerson was also harmed financially. He lost the monetary value of his car and had to pay for other means of transportation, such as taxis, since May 6, 2021. He also has since had to purchase a replacement vehicle so he can get around, a cost he would not have had to incur had Defendants not taken and sold, scrapped, kept, or otherwise disposed of his van.

## Causes of Action

### Count 1: Unconstitutional Taking without Compensation
### Under the Fifth and Fourteenth Amendment as well as 42 U.S.C. § 1983
### On Behalf of Both Plaintiffs

139.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 138 above.

140.    The Fifth Amendment of the United States Constitution, as applied to the States through the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation.

141.    Seizing property to satisfy a debt, and then keeping the value of that property in excess of the debt—or the owner's equity therein—violates the Takings Clause.

142.    Plaintiffs had a vested property right in their vehicles. They possessed legal title and the cars were registered in their names. Plaintiffs also owned the equity in their cars.

143.    Defendants took Plaintiffs' property by selling, scrapping, keeping, or otherwise disposing of Plaintiffs' cars.

144.    Plaintiffs' cars were worth more than Plaintiffs' supposed debts. Yet Defendants took and sold, scrapped, kept, or otherwise disposed of Plaintiffs' cars without returning the surplus value or equity back to Plaintiffs. Therefore, Defendants violated the Takings Clause.

145.    Defendants' choice to scrap Plaintiffs' cars does not extinguish Plaintiffs' vested property rights in their vehicles, or in their vehicles' equity, and scrapping the cars does not

eliminate Defendants' constitutional duty to compensate Plaintiffs for taking the value of their property.

146.    Additionally, Defendants violated the Takings Clause when they took and sold, scrapped, kept, or otherwise disposed of Plaintiff Shaheed's car without even crediting the value thereof, or her equity in the car, towards her supposed parking ticket debt.

147.    Defendants acted under color of state law when they took Plaintiffs' vehicles without returning the surplus value or equity, and when they took Plaintiff Shaheed's vehicle without crediting its value towards her supposed ticket debt.

148.    Defendants took Plaintiffs' cars pursuant to Defendant Wilmington's official policies or customs—namely its tow-and-impound program, written contracts, and ordinances— that were known, and approved of, by its official policymakers.

149.    As a result of Defendants' above-described conduct, policies, and practices, Plaintiffs have suffered and continue to suffer irreparable harm to their constitutional rights. Accordingly, Plaintiffs respectfully ask that this Court enter a judgment declaring that Defendants' conduct violates the Fifth and Fourteenth Amendments to the United States Constitution and permanently enjoining Defendants from seizing property to satisfy a debt and taking the value of that property in excess of the debt (and without crediting it to the debt) in the future.

150.    Plaintiffs also seek the retrospective and equitable relief prayed for below.

**Count 2: Unconstitutional Initial Seizure**
**Under the Fourth and Fourteenth Amendments as well as 42 U.S.C. § 1983**
**On Behalf of Plaintiff Ameera Shaheed**

151.    Plaintiffs reallege and incorporate by reference paragraphs 1–3, 5–9, 11–82, and 114–136 above.

18

152.     The Fourth Amendment of the United States Constitution, as applied to the States through the Fourteenth Amendment, secures the right to be free from unreasonable seizures of their property.

153.     Towing a car is a seizure under the Fourth Amendment and must be supported by either a warrant or an exception to the warrant-requirement.

154.     Defendants Wilmington and First State Towing did not have a warrant when they seized Plaintiff Shaheed's car, nor was the seizure justified by any exception to the warrant requirement.

155.     Plaintiff Shaheed's car was seized while legally and safely parked and was not involved in a traffic accident or interrupting the flow of traffic.

156.     There were no exigent circumstances that necessitated the immediate towing of Plaintiff Shaheed's car.

157.     Plaintiff Shaheed's car was seized to secure payment of alleged parking ticket debt, fines, fees, or penalties.

158.     Additionally, Wilmington Del. Code § 37-125(a) expressly authorizes the seizure of an individual's car solely to secure payment of an alleged debt.

159.     Seizing property without a warrant to secure the payment of an alleged debt violates the Fourth and Fourteenth Amendments' prohibition on unreasonable seizures.

160.     Defendants Wilmington and First State Towing acted under color of state law when they towed Plaintiff Shaheed's car without a warrant.

161.     Defendants Wilmington and First State Towing towed Plaintiff Shaheed's car without a warrant pursuant to Defendant Wilmington's official policies or customs—namely its

tow-and-impound program, written contracts, and ordinances—that were known, and approved of, by its official policymakers.

162.     As a result of Defendants Wilmington and First State Towing's above-described conduct, policies, and practices, Plaintiff Shaheed has suffered and continues to suffer irreparable harm to her constitutional rights. Accordingly, Plaintiffs respectfully ask that this Court enter a judgment declaring that Defendants' conduct violates the Fourth and Fourteenth Amendments to the United States Constitution and permanently enjoining Defendants from seizing cars without a warrant to secure payment of alleged parking ticket debt in the future.

163.     Separately, Plaintiffs ask that this Court enter a judgment declaring that Wilmington Del. Code § 37-125(a) facially violates the Fourth and Fourteenth Amendments to the United States Constitution and enjoining its enforcement.

164.     Plaintiffs also seek the retrospective and equitable relief prayed for below.

**Count 3: Unconstitutional Continuous Seizure**
**Under the Fourth and Fourteenth Amendments as well as 42 U.S.C. § 1983**
**On Behalf of Both Plaintiffs**

165.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 138 above.

166.     The Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, secures an individual's right to be free from unreasonable seizures of their property.

167.     The Fourth Amendment applies both to the initial seizure of property and to its continued retention by the government.

168.     Impounding a car is a meaningful interference with its owner's possessory interest and is a continuous seizure. Therefore, the government must have a continuous constitutional justification to hold an individual's property. However, securing monetary payment on an alleged

20

debt from a property owner is not a valid basis to continuously hold—i.e., seize—their property. If the government believes it is owed a debt, it must obtain a judgment and a seizure warrant; it cannot simply take and hold someone's property because it believes that they owe it money.

169.    Defendants violated the Fourth Amendment by continuously seizing—i.e., impounding—Plaintiffs' cars without a warrant and conditioning the release of those vehicles upon Plaintiffs' monetary payment.

170.    Additionally, Wilmington Del. Code § 37-131 expressly authorizes the continuous seizure of an individual's car and the conditioning of its release upon payment. This facially violates the Fourth Amendment.

171.    Defendants acted under color of state law when they continued to retain Plaintiffs' vehicles at the impound lot without a seizure warrant.

172.    Defendants' ongoing seizure of Plaintiffs' vehicles occurred pursuant to Defendant Wilmington's official policies or customs—namely its tow-and-impound program, written contracts, and ordinances—that were known, and approved of, by its official policymakers.

173.    As a result of Defendants' above-described conduct, policies, and practices, Plaintiffs have suffered and continue to suffer irreparable harm to their constitutional rights. Accordingly, Plaintiffs respectfully ask that this Court enter a judgment declaring that Defendants' conduct violates the Fourth and Fourteenth Amendments to the United States Constitution and permanently enjoining Defendants from continuously seizing, or retaining, cars without a warrant and conditioning their release on monetary payment in the future.

174.    Separately, Plaintiffs ask that this Court enter a judgment declaring that Wilmington Del. Code § 37-125(a) facially violates the Fourth and Fourteenth Amendments to the United States Constitution and enjoining its enforcement.

175.    Plaintiffs also seek the retrospective and equitable relief prayed for below.

**Count 4: Procedural Due Process: Pre-Deprivation**
**Under the Fourteenth Amendment as well as 42 U.S.C. § 1983**
**On Behalf of Plaintiff Shaheed**

176.    Plaintiffs reallege and incorporate by reference paragraphs 1–3, 5–9, 11–82, 114–136, and 154–157 above.

177.    The Fourteenth Amendment provides that no person shall be deprived of property without due process of law.

178.    The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. With rare exceptions, this means that the government must provide notice and an opportunity to be heard before it seizes property.

179.    Defendants did not provide any notice before they seized Plaintiff Shaheed's vehicle.

180.    Defendants did not provide any opportunity to be heard before they seized Plaintiff Shaheed's vehicle.

181.    Wilmington Del. Code § 37-125(a) expressly authorizes the seizure of an individual's car solely to secure payment of an alleged debt without any pre-deprivation notice or hearing.

182.    Individuals have a significant interest in, and need for, their cars. Many individuals depend on their cars to get to work, to medical appointments, and to see their families and friends.

183.    Any interest that Defendants' have in seizing property as a surety for the payment of parking tickets is minimal compared to that individual's interest in their means of transportation.

184.    Defendants' interest—if any—in seizing a car to secure payment of a few hundred dollars in parking tickets *now* as opposed to in a few months or after establishing a payment plan is minimal.

185.    There is no need for quick governmental action when Defendants seize legally and safely parked cars solely to secure payment of monetary fines. Defendants could, instead, notify property owners that their vehicle is potentially subject to being towed, provide an opportunity to request a hearing, and then tow the vehicle following a hearing.

186.    Defendant Wilmington has a myriad of other ways to collect its ticket debt—for instance, by establishing a payment plan, making use of debt collectors, or obtaining a judgment.

187.    Defendants' failure to provide pre-deprivation notice and a hearing, combined with the fact that they sell, scrap, keep or otherwise dispose of vehicles after just thirty days, creates a high risk of severe and permanent deprivation. If Defendants tow a car from an individual who does not actually owe the supposed ticket debt, that individual may lose her car simply because she is unable to pay the amounts necessary to recover the car and challenge the ticket debt.

188.    Had Defendants provided Plaintiff Shaheed with a pre-deprivation hearing, she could have argued, for example: (1) that she could not afford to pay $320 in parking tickets within 30 days and that she should not permanently lose her car simply because she is poor; (2) that the underlying parking tickets were still under appeal and that her car should not be seized while she continued to litigate; and (3) had she later lost her ticket appeals, she could have reasonably set up a payment plan with Defendants, rather than permanently lose her means of transportation. Plaintiff Shaheed likely would have been successful on these, or other, arguments.

189.    Defendants acted under color of state law when they failed to provide Plaintiff Shaheed with pre-deprivation notice and a hearing.

190.     Defendants took Plaintiff Shaheed's vehicle without pre-deprivation notice and a hearing pursuant to Defendant Wilmington's official policies or customs—namely its tow-and-impound program, written contracts, and ordinances—that were known, and approved of, by its official policymakers.

191.     As a result of Defendants' above-described conduct, policies, and practices, Plaintiff Shaheed has suffered and continues to suffer irreparable harm to her constitutional rights. Accordingly, Plaintiffs respectfully ask that this Court enter a judgment declaring that Defendants' conduct violates the Fourteenth Amendment to the United States Constitution and permanently enjoining Defendants from failing to provide pre-seizure notice or hearing before towing cars to secure payment of alleged parking ticket debt in the future.

192.     Separately, Plaintiffs ask that this Court enter a judgment declaring that Wilmington Del. Code § 37-125(a) facially violates the Fourteenth Amendments to the United States Constitution and enjoining its enforcement.

193.     Plaintiffs also seek the retrospective and equitable relief prayed for below.

**Count 5: Procedural Due Process: Post-Deprivation**
**Under the Fourteenth Amendment as well as 42 U.S.C. § 1983**
**On Behalf of Both Plaintiffs**

194.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 138 above.

195.     The Fourteenth Amendment provides that no person shall be deprived of property without due process of law.

196.     The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. In most circumstances, the government must provide individuals with an opportunity to be heard before taking their property. However, when a pre-seizure hearing is not possible, post-deprivation process may be adequate.

197.    Defendants sold, scrapped, kept, or otherwise disposed of Plaintiffs' vehicles without affording them a post-seizure hearing.

198.    In fact, Defendants do not provide any post-seizure hearing unless vehicle owners pay Defendants' full financial demand up-front "under protest." Wilmington Del. Code § 37-131(b). In other words, Defendants put a vehicle owner's opportunity to be heard behind a paywall.

199.    Defendants must provide vehicle owners with a hearing before selling, scrapping, keeping, or otherwise disposing of an individual's car.

200.    Individuals have a great interest in, and need for, their vehicles. Many people rely on their cars to get to work, medical appointments, or to visit their families and friends. For others, like Plaintiff Shaheed, driving is the only way to travel without needless and additional physical pain.

201.    Defendants' interest—if any—in requiring up-front payment before providing vehicle owners with a hearing is minimal. Defendants possess several other ways to collect ticket debt, such as by establishing a payment plan, making use of debt collectors, or obtaining a judgment.

202.    Defendants' failure to provide a post-seizure hearing creates a high risk of severe and permanent deprivation. Defendants sell, scrap, keep, or otherwise dispose of people's cars after only thirty days, with the result that an individual who cannot afford to pay the City's full demand within thirty days will lose his or her vehicle forever, even if that individual does not owe the alleged ticket debt.

203.    What is more, Defendants' failure to provide a post-seizure hearing means that vehicle owners have no opportunity to argue that they should not lose their cars simply because they cannot afford to pay their ticket debts. Before the government can permanently take a person's

car because of unpaid ticket debt, the Constitution requires a hearing on the issue of the vehicle owner's ability to pay.

204.    Even individuals who ultimately do owe the City for parking ticket debt should not be forced to lose their cars simply because they cannot afford to pay the full amount within thirty days of having their cars seized. Defendants could instead work with impoverished vehicle owners to set up a reasonable payment plan rather than permanently taking and selling, scraping, keeping, or otherwise disposing of their cars. Defendants' interest in immediate payment, as opposed to payment over the course of several months, is minimal compared to an individual's interest in their vehicle.

205.    Had they been provided a post-deprivation hearing, Plaintiffs could have argued, for example, that they could not afford to pay Defendants' financial demand within thirty days and should not lose their cars as a result thereof. Plaintiff Dickerson would have also been able to show that Defendant City Towing was not legally authorized to charge an additional $910 in fees and that he was legally entitled to reclaim his car without additional payment. Plaintiff Shaheed could have also shown that the underlying tickets were still under appeal and that Defendants should not have seized her car while she continued to litigate. Plaintiffs likely would have been successful on these, or other, arguments.

206.    Defendants acted under color of state law when they failed to provide Plaintiffs with a post-deprivation hearing.

207.    Defendants took and sold, scrapped, kept, or otherwise disposed of Plaintiffs' cars without a post-deprivation hearing pursuant to Defendant Wilmington's official policies or customs—namely its tow-and-impound program, written contracts, and ordinances—that were known, and approved of, by its official policymakers.

208.    As a result of Defendants' above-described conduct, policies, and practices, Plaintiffs have suffered and continue to suffer irreparable harm to their constitutional rights. Accordingly, Plaintiffs respectfully ask that this Court enter a judgment declaring that Defendants' above-described conduct violates the Fourteenth Amendment to the United States Constitution and permanently enjoining Defendants from failing to provide a meaningful post-deprivation hearing, including on a vehicle owners' ability to pay in the future.

209.    Additionally, Plaintiffs ask that this Court enter a judgment declaring that the provisions of Wilmington Del. Code § 37-131(b) that condition a post-seizure hearing on a vehicle owner's up-front payment of fees under protest facially violate the Fourteenth Amendment's guarantee of due process and enjoining its enforcement.

210.    Plaintiffs also seek the retrospective and equitable relief prayed for below.

**Count 6: Excessive Fine**
**Under the Eighth and Fourteenth Amendments as well as 42 U.S.C. § 1983**
**On Behalf of Both Plaintiffs**

211.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 138 above.

212.    The Eight Amendment, as applied to the States by the Fourteenth Amendment, provides that excessive fines shall not be imposed. Fines are constitutionally excessive when they are grossly disproportionate to the gravity of a defendant's offense.

213.    The loss of Plaintiff Shaheed's car was a grossly disproportionate fine compared to the few hundred dollars of parking tickets that she allegedly owed.

214.    Parking tickets are among the lowest level offenses and cause minimal harm to society at large. That is reflected in the tens of dollars that Defendant Wilmington charges for parking improperly.

215.    Plaintiff Shaheed's parking tickets are unrelated to any criminal activity.

27

216.    Additionally, the extent of the harm that the City suffered because Plaintiff Shaheed supposedly failed to pay $320 in parking tickets is a far cry from Plaintiff Shaheed losing her car, or the approximately $4,250 value thereof.

217.    The loss of Plaintiff Dickerson's car was a grossly disproportionate fine compared to his parking violation for failing to move his vehicle within seven days after receiving notice that he must do so.

218.    Plaintiff Dickerson's parking violation is among the lowest level offenses and causes minimal harm to society at large. That is reflected in the $60 fine that the City issued, and Plaintiff Dickerson paid.

219.    Plaintiff Dickerson's parking violation was unrelated to any criminal activity.

220.    The extent of the harm that the City suffered from Plaintiff Dickerson's parking violation was minimal and is also reflected in the $60 fine that the City charges for such violations. That is a far cry from Plaintiff Dickerson's loss of his car or the several-thousand-dollar value thereof.

221.    Defendants' scheme is also at least partially punitive. Repeatedly throughout its parking ordinances, the City refers to those who allegedly owe parking tickets as "scofflaws," and it has designed a system that is, at least in part, meant to deter them. Additionally, vehicle owners are subject to a civil penalty for any towable offense, including parking in public with more than $200 in outstanding tickets or failing to move from a parking space in time.

222.    Defendants benefit financially from imposing such a heavy fine—the loss of one's car—for such minor offenses as unpaid parking tickets. This penalty is how the City "pays" for its municipal impound program. Because of this profit incentive, the severity of the fine imposed by Defendants is even more suspect.

223.    Defendants acted under color of state law when they fined Plaintiffs the value of their cars as a result of minor parking violations.

224.    Defendants fined Plaintiffs the value of their cars as a result of minor parking violations pursuant to Defendant Wilmington's official policies or customs—namely its tow-and-impound program, written contracts, and ordinances—that were known, and approved of, by its official policymakers.

225.    As a result of Defendants' above-described conduct, policies, and practices, Plaintiffs have suffered and continue to suffer irreparable harm to their constitutional rights. Accordingly, Plaintiffs respectfully ask that this Court enter a judgment declaring that Defendants' conduct violates the Eighth and Fourteenth Amendments to the United States Constitution and permanently enjoining Defendants from fining individuals the value of their vehicles as a result of minor traffic infractions or unpaid parking ticket debt in the future.

226.    Plaintiffs also seek the retrospective and equitable relief prayed for below.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully pray for the following relief:

A. Plaintiffs demand the return of their cars. If their cars have already been scrapped, Plaintiffs seek the fair market value of their property at the time that it was towed as equitable relief.

B. Compensatory damages. The amount of damages is different for each Plaintiff, continues to accrue, and is to be determined at trial. Plaintiffs are not seeking damages (other than nominal damages) for pain and suffering or for mental anguish.

C. Plaintiffs Shaheed and Dickerson each seek nominal damages in the amount of $1.00 from each Defendant.

D.   In addition to the above equitable and retrospective relief, Plaintiff Shaheed also seeks the following prospective relief:

    i.   A declaratory judgment that Defendants' actions seizing property to satisfy a debt, and then keeping the value of that property in excess of the debt (and without crediting it to the debt) is an unconstitutional taking, and a permanent injunction barring Defendants from engaging in this practice in the future.

    ii.   A declaratory judgment that Defendants' warrantless seizure of Plaintiff Shaheed's car to secure payment of alleged parking ticket debt violates the Fourth Amendment, and a permanent injunction barring Defendants from engaging in this practice in the future.

    iii.   A declaratory judgment that the provisions of Wilmington Del. Code § 37-125(a) that allow for the warrantless seizure of cars to secure payment of alleged parking ticket debt facially violate the Fourth Amendment, and a permanent injunction barring Defendants from enforcing these provisions in the future.

    iv.   A declaratory judgment that Defendants' continuous warrantless seizure or retention of cars and conditioning their release on monetary payment violates the Fourth Amendment, and a permanent injunction barring Defendants from engaging in this practice in the future.

    v.   A declaratory judgment that the provisions of Wilmington Del. Code § 37-131 that allow for the continuous warrantless seizure of cars and conditioning their release on monetary payment facially violates the Fourth Amendment, and a permanent injunction barring Defendants from enforcing these provisions in the future.

vi.   A declaratory judgment that Defendants' failure to provide pre-deprivation notice or hearing before towing Plaintiff Shaheed's car to secure payment of alleged parking ticket debt violates the Fourteenth Amendment's guarantee of due process, and a permanent injunction barring Defendants from engaging in this practice in the future.

vii.   A declaratory judgment that the provisions of Wilmington Del. Code § 37-131 that allow for the seizure of cars to secure payment of alleged parking ticket debt without pre-deprivation notice or hearings facially violate the Fourteenth Amendment's guarantee of due process, and a permanent injunction barring Defendants from enforcing these provisions in the future.

viii.   A declaratory judgment that Defendants' failure to provide a meaningful post-deprivation hearing violates the Fourteenth Amendment's guarantee of Due Process, and a permanent injunction barring Defendants from engaging in this practice in the future.

ix.   A declaratory judgment that the provisions of Wilmington Del. Code § 37-131(b) that condition a post-seizure hearing on a vehicle owner's up-front payment of fees under protest facially violate the Fourteenth Amendment's guarantee of due process, and a permanent injunction barring Defendants from enforcing these provisions in the future.

x.   A declaratory judgment that the loss of one's car is an Excessive Fine for parking violations and therefore violates the Eighth Amendment, as well as a permanent injunction barring Defendants from engaging in this practice in the future.

E.  An award of pre- and post-judgment interest on the fair market value of Plaintiffs' vehicles at the time that they were towed.

F.  An award of Plaintiffs' costs and expenses of this action, together with reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

G.  Such further equitable and legal relief and this Court deems just and proper.

/s/ John W. Shaw
John W. Shaw (No. 3362)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
*Attorneys for Plaintiffs*

*-and-*

Robert E. Johnson
INSTITUTE FOR JUSTICE
16781 Chagrin Blvd., #256
Shaker Heights, OH  44120
(703) 682-9320

William Aronin
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA  22203
(703) 682-9320

Dated:  September 22, 2021