IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMEERA SHAHEED and EARL DICKERSON, | |
| Plaintiffs, | |
| v. | Civil Action No. 21-1333-CFC |
| CITY OF WILMINGTON, FIRST STATE TOWING, LLC, and CITY TOWING SERVICES, LLC, | |
| Defendants. | |

---

John W. Shaw, SHAW KELLER LLP, Wilmington, Delaware; Robert E. Johnson, INSTITUTE FOR JUSTICE, Shaker Heights, Ohio; William Aronin, INSTITUTE FOR JUSTICE, Arlington, Virginia

*Counsel for Plaintiffs*

Laura Najemy, Rosamaria Tassone-DiNardo, CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, Delaware

*Counsel for Defendant City of Wilmington*

David J. Ferry, Jr., Rick S. Miller, FERRY JOSEPH, P.A., Wilmington, Delaware; Neil Raymond Lapinski, GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware

*Counsel for Defendant First State Towing, LLC*

Joseph W. Benson, Andrew G. Ahern, III, JOSEPH W. BENSON, P.A., Wilmington, Delaware; Neil Raymond Lapinski, GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware

*Counsel for Defendant City Towing Services, LLC*

**MEMORANDUM OPINION**

November 15, 2022
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiffs Ameera Shaheed and Earl Dickerson have sued the City of

Wilmington and two private towing companies, First State Towing, LLC and City

Towing Service, LLC, under 42 U.S.C. § 1983 for engaging in what Plaintiffs call

an "Impound-and-Scrap Scheme" that "wrongfully tak[es] people's cars and us[es]

them to fund the City's impound system" in violation of several provisions in the

Constitution.  D.I. 1 at 1, 3.  Pending before me is Wilmington's motion to dismiss

the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.I. 15).

## I.   BACKGROUND

Because I am considering the merits of a motion to dismiss, the following

facts and background information, except where noted otherwise, are taken from

the Complaint and from documents explicitly relied upon in the Complaint and are

assumed to be true.  *See Mgmt. Sci. Assocs. v. Datavant, Inc.*, 510 F. Supp. 3d 238,

244 (D. Del. 2020).

### A. Wilmington's Towing and Impoundment Policies

Wilmington imposes monetary fines against car owners for parking

violations.  D.I. 1 ¶ 14.  Section 37-125(a) of the City's Code authorizes the City to

tow and impound a car parked on a City street if the car's owner has $200 or more

in unpaid parking tickets.  WILMINGTON, DEL., CITY CODE § 37-125(a) (1993);

D.I. 1 ¶ 15.  Unpaid tickets do not count towards the $200 threshold "until the designated appeal window has passed."  WILMINGTON, DEL., CITY CODE § 37-125(a) (1993).  Under section 37-131 of the Code, once a car has been towed and impounded, the car's owner cannot obtain it from the impoundment lot unless and until she has paid the City all her outstanding parking fines and towing and storage fees, regardless of whether the appeal window has run for those fines.  *Id.* § 37-131.  The Code permits the owner to make the payment of any fine "under protest," in which case the payment is held in escrow by the City's finance department pending the outcome of a hearing before the City's municipal court.  *Id.* § 37-131(b).  Under the Code, "[i]f the municipal court determines that . . . such fines and fees or any part thereof need not have been paid, the court shall so advise the department of finance which shall release such fines or fees or part thereof from the escrow account to the motor vehicle owner or his agent."  *Id.*

Each year, Wilmington contracts with a private company to tow and impound motor vehicles.  The City's Charter requires that its contracts be competitively bid and awarded to the lowest responsible bidder.  WILMINGTON, DEL., CHARTER § 8-200(1) (1993).  To that end, Wilmington solicits each year bids in the form of the towing and storage fees a company will charge the owners of the cars it tows and impounds.  D.I. 1 ¶ 25.  The City Code prohibits the company that wins the towing and impoundment contract from charging a car owner towing and

2

storage fees that exceed the contracted fee amounts.  WILMINGTON, DEL., CITY
CODE § 37-131(a)(3) (1993).

In 2018, First State Towing won the City's contract when it bid, and
Wilmington accepted, a towing fee of $0 and a daily storage fee of $10.  D.I. 1
¶ 27.  In 2019 and 2020, City Towing won the contract when it bid, and
Wilmington accepted, $0 for both the towing and storage fees.  D.I. 1 ¶¶ 28–29.

You might wonder, given these fee amounts, how First State and City
Towing could have made any money under their contracts.  The answer, according
to the Complaint, is that Wilmington "contractually empowered the . . . towing
companies to keep and scrap people's cars" that were impounded for more than 30
days, D.I. 1 ¶ 2, 22, and "to retain all proceeds" obtained from the scrapping of
those vehicles, D.I. 1 ¶ 22–23.  In the words of the Complaint, "[b]y structuring its
contract in this way, and then accepting zero-dollar ($0) bids, . . . Wilmington
created an obvious incentive problem: the only way for its private contractors to
make money was to sell, scrap, keep, or otherwise dispose of the cars that they had
towed."  D.I. 1 ¶ 30.  And, according to the Complaint, "[t]hat is exactly what
happened," and "in 2020 alone, . . . City Towing sold, scrap[p]ed, kept, or
otherwise disposed of at least 987 out of the 2,551 cars it towed."  D.I. 1 ¶ 32.  The
Complaint further alleges that no proceeds obtained from the scrapping of cars by
First State or City Towing were credited against the car owners' alleged parking

3

debts, D.I. 1 ¶ 41, and that no "surplus value"—i.e., the amount of the scrapping value of a car above and beyond the alleged parking debt of its owner—was ever returned to car owners, D.I. 1 ¶ 42.

### B. Plaintiff Shaheed

According to the Complaint, over a period of nine days in September 2019, Shaheed's 2005 Hyundai XG350 was legally parked in Wilmington but was nonetheless issued six parking tickets. D.I. 1 ¶¶ 3, 46–49, 64, 72. Shaheed alleges that she "timely appealed her tickets [*plural*]," D.I. 1 ¶ 49, and that "while her appeal [*singular*] was pending," the City caused First State to tow and impound her car, D.I. 1 ¶¶ 50–51. Shaheed does not identify the appeal that was pending when her car was towed.

Shaheed alleges that Wilmington and First State refused to release her car from impoundment unless and until she paid the City $320. D.I. 1 ¶¶ 3, 63–64. She says she was unable to pay that amount and, as a result, her car remained impounded for more than 30 days and was ultimately scrapped by First State. D.I. 1 ¶¶ 66–67. Although the retail value of Shaheed's car was $4,250 (or $3,930 more than $320), the City never extinguished Shaheed's fines. D.I. 1 ¶¶ 73–75. Nor did Wilmington or First State return to Shaheed any of the surplus value. D.I. 1 ¶ 77. On the contrary, Wilmington maintains that Shaheed still owes it for payment of the parking tickets, and Wilmington has "added additional penalties" to

4

Shaheed's ticket debt and "authorized debt collection action" for those penalties against Shaheed. D.I. 1 ¶¶ 78–79.

The alleged $320 fine amount is a bit of a mystery. The initial fine for each ticket was $40, *see, e.g.*, D.I. 17-3 at 205; and the City told Shaheed in letters sent to her home for each ticket that if she failed to pay or appeal a ticket within 21 days of its issuance, a $20 penalty would be added to the fine amount, *see, e.g.*, D.I. 17-3 at 205. Thus, you would expect the total fine for each unpaid ticket to be $60, which is not a factor of $320.

In those same letters, the City explained how Shaheed could file an appeal with the City's Office of Civil Appeals and that, if an appeal were denied, she could appeal the denial to the State's Justice of the Peace Court. *See, e.g.*, D.I. 17-3 at 205–06. The letters also expressly stated that "[i]f [Shaheed] ha[d] more than five or more outstanding tickets and/or owe[d] $200 or more due to outstanding tickets, [her] vehicle [wa]s also subject to being towed or booted without further notice or warning." D.I. 17-3 at 205–06.

Wilmington states in its briefing that it towed Shaheed's car for "past due fines and penalties [that] were related to parking tickets Shaheed did *not* appeal and failed to pay." D.I. 16 at 5 (emphasis in the original). It cites in support of this statement an Immobilization and Tow record that appears to show that a boot was placed on Shaheed's car on October 25, 2019 and that the boot was removed and

5

the car was towed on October 30, 2019.  D.I. 16 at 5; D.I. 17-4 at 239.  The

Immobilization and Tow record, which was not referenced in the Complaint, also

appears to show that as of October 30, 2019 Shaheed owed Wilmington a total of

$340 (not $320), which consisted of three $80 fines for three parking tickets

(totaling $240) and a $100 "boot fee."  D.I. 17-4 at 239–40.  Although it is

undisputed that Shaheed did not appeal these three parking tickets, nothing in the

Complaint, the documents referenced in the Complaint, or the Immobilization and

Tow record explains why the fine amounts were $80.

Wilmington argues, and Shaheed does not dispute, that Shaheed timely

appealed only three of her six tickets to the City's Office of Civil Appeals.  *See*

D.I. 16 at 4; D.I. 17-3 at 210, 214; D.I. 29.  The Office of Civil Appeals denied two

of the appeals on September 27, 2019 and the third appeal on October 10, 2019.

D.I. 17-3 at 217, 219.  Shaheed appealed the first two denials to the Justice of the

Peace Court, which denied those appeals on January 17, 2020.  *See* D.I. 17-3 at

222–27; D.I. 17-4 at 231–37.  The Complaint alleges that Shaheed's car was towed

on October 30, 2019 (i.e., while the two appeals in the Justice of the Peace Court

were pending).  D.I. 1 ¶ 51.

### C. Plaintiff Dickerson

The Complaint alleges that Dickerson's 2002 Dodge Ram Van was issued a

parking ticket in April 2021 that "indicated that the car needed to be moved within

seven days or it would be towed." D.I. 1 ¶ 88. Dickerson alleges that he was

dealing with the death of a grandchild at the time and that he therefore failed to

move the car. D.I. 1 ¶ 89. On April 19, 2021, at Wilmington's direction, City

Towing towed and impounded Dickerson's car. D.I. 1 ¶¶ 90–91. According to

Dickerson, although he paid the $60 parking ticket and a $25 "release fee," City

Towing refused to return his car to him until he paid an additional $910 for

"storage fees." D.I. 1 ¶¶ 94, 97–101. Dickerson was unable to afford that amount,

and consequently, City Towing scrapped his car after 30 days. D.I. 1 ¶¶ 104–06.

Although the retail value of the car was between $2,750 and $4,834, neither

Wilmington nor City Towing ever returned any surplus value to Dickerson. D.I. 1

¶ 111–12. The Complaint further alleges that "Defendants failed to

provide . . . Dickerson with a post-deprivation hearing that would have allowed

him to try to reclaim his car without paying the $910 demand." D.I. 1 ¶ 107.

### D. Plaintiffs' Claims

The Complaint originally had six counts, but Plaintiffs stated in a letter filed

after oral argument on the pending motion that they would voluntarily dismiss

Counts II and III, *see* D.I. 42, and I will accordingly dismiss those counts.

All the remaining counts are brought pursuant to § 1983. In Count I of the

Complaint, Plaintiffs allege that Defendants' towing, impoundment, and scrapping

of their cars violated the Takings Clause of the Fifth Amendment, as applied to the

7

City under the Fourteenth Amendment. D.I. 1 at 17–18. In Count IV, Shaheed alleges that Defendants' seizure of her car without any notice or a hearing violated the Due Process Clause of the Fourteenth Amendment. D.I. 1 at 22–24. In Count V, Plaintiffs allege that Defendants scrapped their cars without a "post-deprivation" hearing in violation of the Due Process Clause of the Fourteenth Amendment. D.I. 1 at 24–27. And in Count VI, they allege that the scrapping of their cars to pay for their alleged parking violations constitutes an excessive fine in violation of the Fifth Amendment as applied to the City under the Fourteenth Amendment. D.I. 1 at 27–29.

## II.    LEGAL STANDARDS FOR MOTION TO DISMISS

### A. Rule 12(b)(6)

"A district court may grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (internal quotation marks and citation omitted). To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must include more than mere "labels and conclusions" or "a formulaic recitation of

8

the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must set forth enough facts, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

### B. Section 1983

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "[M]unicipalities and other local government units [are] . . . persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).  Under *Monell*, "[a] municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the

9

implementation of a municipal policy or custom, causes a constitutional violation." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (citing *Monell*, 436 U.S. at 691–95). Thus, a municipality may be sued directly if it is alleged to have violated the plaintiff's constitutional rights through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers." *Monell*, 436 U.S. at 690. In addition, a municipality may be sued under § 1983 "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91.

## III. DISCUSSION

### A. The City's Arguments with Respect to All Claims

Wilmington argues that all claims should be dismissed because the Complaint "fails to plausibly show an unconstitutional custom." D.I. 16 at 10. In the City's words: "two incidents do not constitute a pattern sufficient to show custom or practice." D.I. 16 at 10. This argument fails for two reasons. First, under *Monell* a municipality faces liability under § 1983 for an "unconstitutional *policy or* custom," *Colburn*, 946 F.2d at 1027 (emphasis added); and the Complaint alleges that Wilmington's towing ordinances and contracts constituted an unconstitutional policy, D.I. 1 ¶ 148. Second, to the extent the Complaint alleges an unconstitutional custom, that alleged custom is not predicated solely on

10

two incidents.  The Complaint alleges that in 2020 Wilmington allowed City

Towing to sell, scrap, or otherwise dispose of 987 of the 2,551 vehicles it towed

that year.  D.I. 1 ¶ 32.

     Wilmington next argues that

> to the extent Plaintiffs premise municipal liability on the
> actions of its independent contractors, it is well-settled
> that the City cannot be held liable for constitutional
> violations under a theory of *respondeat superior*.  An
> employee's deviation from official policy cannot
> establish the requisite causal link between the alleged
> harm and the municipality.  Nor do municipalities have a
> duty to supervise independent contractors.

D.I. 16 at 10 (citations omitted).  But the Complaint alleges that Wilmington's

policies and customs as implemented by City Towing and First State at the City's

direction created an unconstitutional system, not that City Towing and First State

deviated from those policies or customs when they towed and impounded

Plaintiffs' and others' cars.  And the law is clear that "[p]rivate persons, jointly

engaged with state officials in [a] prohibited action," act under color of state law.

*United States v. Price*, 383 U.S. 787, 794 (1966).

### B. Plaintiffs' Due Process Claims

     Shaheed alleges in Count IV of the Complaint that Defendants seized her car

without first providing notice and a hearing in violation of her due process rights.

D.I. 1 ¶¶ 178–80.  Both Shaheed and Dickerson allege in Count V that Defendants'

impoundment and scrapping of their vehicles violated their due process rights

because the City refused to provide them a post-seizure hearing unless and until they paid their outstanding parking fines under protest.  D.I. 1 ¶¶ 196–98.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and internal quotation marks omitted).  In most cases, the opportunity to be heard should come before the government deprives an individual of his property.  But "the necessity of quick action by the [government] or the impracticality of providing any meaningful pre[-]deprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the [government's] action at some time after the initial taking, can satisfy the requirements of procedural due process." *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

12

The Court in *Mathews* identified three factors that courts should consider when determining whether an individual has received the process she is due under the Constitution:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

### 1. Shaheed's Pre-Seizure Due Process Claim

Wilmington argues that Shaheed's pre-seizure due process claim should be dismissed for two reasons: (1) Shaheed was notified of and declined an opportunity to appeal the ticket fines for which her car was towed; and (2) due process does not require a city to provide a car owner with a hearing before towing the owner's car from the city's streets. D.I. 16 at 12–14.

This first argument fails at this stage of the proceedings because it requires resolution of disputed (and, frankly, confusing) factual allegations. The Complaint alleges that Shaheed's car was ticketed six times and that she "timely appealed her tickets," D.I. 1 ¶ 49, intimating that she appealed all six tickets. But the Complaint also alleges that Shaheed's car was towed "while her *appeal*"—i.e., *one* appeal— was pending. D.I. 1 ¶ 50. Wilmington counters—and Shaheed does not dispute—

13

that Shaheed appealed only three of her six tickets.  D.I. 16 at 4; D.I. 29.

Wilmington also insists that Shaheed's car was towed for fines related to the three

tickets it says she did not appeal.  D.I. 16 at 5.  In support of this assertion,

Wilmington points to the Immobilization and Tow record, even though that record

was not referenced in the Complaint.  Putting aside whether I might properly

consider the Immobilization and Tow record to resolve a Rule 12(b)(6) motion, the

record appears to show that at the time her car was towed, Shaheed had three

tickets, each with fine amounts of $80.  D.I. 17-4 at 239–40.  Although the sum of

those fine amounts ($240) exceeds the $200 towing threshold, nothing in the

record explains how a ticket's fine could be $80, let alone how or why Shaheed

would have known that the fine for each of the three tickets in question was $80.

On the contrary, Wilmington's notice letters to Shaheed expressly stated that

failure to pay a fine within 21 days increases the initial $40 fine amount to $60,

D.I. 17-3 at 205, and the sum of three $60 fines ($180) would not exceed the $200

towing threshold.  Given these questionable and contested factual allegations, I

cannot accept Wilmington's factual assertion that Shaheed declined to appeal the

ticket fines for which her car was towed.

    I agree with Wilmington, however, that Shaheed's pre-seizure due process

claim fails as a matter of law.  Where, as here, a city provides an adequate post-

deprivation remedy, due process does not require the city to provide a car owner

with a hearing before it tows the owner's car from its streets.  *See Sutton v. City of Milwaukee*, 672 F.2d 644, 646 (7th Cir. 1982) ("[I]t is not a violation of the due process clause to tow an illegally parked car without first giving the owner notice and an opportunity to be heard with respect to the lawfulness of the tow."); *see also Abernathy v. City of Pittsburgh*, 795 F. App'x 85, 87 (3d Cir. 2020) (holding that a pre-deprivation hearing before towing plaintiff's car was not required where plaintiff was provided an adequate post-deprivation remedy under Pennsylvania law).

The *Mathews* factors, considered in their totality, support this conclusion. First, though not insignificant, the property interest affected by towing the car from the street is not the car itself but the use of the car until the conclusion of a post-deprivation hearing.  Shaheed argues that the post-deprivation hearing afforded by Wilmington is itself unconstitutional and therefore inadequate, but I reject that argument for the reasons discussed below, *see infra* Section III.B.2.

Second, the risk of an erroneous deprivation and the probable value of additional safeguards to protect against an erroneous deprivation are small.  As the Court in *Sutton* noted:

> The determination that a car is illegally parked is pretty cut and dried.  Police officers make mistakes, of course, but in giving out parking tickets not very many—far fewer than in the case of moving violations.  Rarely would a car's owner be able to convince an impartial arbiter that his car really was not illegally parked and so

15

> should not be towed; few would be the occasions,
> therefore, when notice and an opportunity to be heard in
> advance of towing would prevent an unjust deprivation
> of a property interest.

672 F.2d at 646.  The determination that the sum of a car owner's unpaid tickets

exceeds $200 is similarly cut and dried; and Shaheed has not offered any evidence

or even argument that requiring a hearing before towing would reveal counting

mistakes and thereby prevent erroneous towings.

Third, a city's interest in towing from its streets cars that are repeatedly

illegally parked is strong and the fiscal and administrative burdens of pre-

deprivation hearings would be prohibitive.  Towing repeat violators of parking

regulations deters car owners from flouting the city's laws and frees up parking

spaces for car owners who abide by the laws.  Requiring a hearing before towing is

impractical.  As the Court in *Sutton* stated: "There is no way that the city . . . can

notify the owners of illegally parked cars that their cars will be towed and provide

them then and there with an opportunity to challenge the lawfulness of the towing.

To require notice and hearing in advance is . . . to prevent all towing of illegally

parked cars."  672 F.2d at 645–46.

Accordingly, I will dismiss Shaheed's pre-seizure due process claim (Count

IV).

16

## 2.   Defendants' Post-Deprivation Due Process Claim

Wilmington argues that Count V should be dismissed because the City provided notice of and gave Plaintiffs the opportunity for a post-impoundment hearing to challenge the lawfulness of their cars' seizures and impoundments. D.I. 16 at 14–17.  Plaintiffs counter that a car owner cannot have a post-impoundment hearing unless and until she pays the disputed fines and towing and storage fees under protest, and that this upfront payment requirement renders Wilmington's post-deprivation remedies unconstitutional.  D.I. 29 at 20–21.

Plaintiffs cite no case law that supports their position. *See* D.I. 29 at 20–21. And here, too, the *Mathews* factors weigh against Plaintiffs' due process claim.  As discussed above, *see* Section III.B.1, although the private interest affected by the City's policy—the uninterrupted use of a car—can be significant, the risk of an erroneous deprivation is minimal.  Moreover, the government's interest—ensuring that the owner of the illegally parked vehicle pays for its removal from the street and retaining possession of the vehicle as security for payment of the outstanding ticket debt and towing and storage fees—substantially outweighs the private interest.  Plaintiffs are in effect arguing that due process requires the immediate release of a ticketed car on demand.  But a release-on-demand policy would effectively require the City to (1) provide an immediate, on-the-spot hearing; (2) use its own funds to pay for the towing and storage of the vehicles itself; or (3)

17

allow an illegally parked vehicle to remain on the street, thereby creating a safety hazard or depriving a law-abiding car owner of a parking spot.  None of these options is satisfactory.  Accordingly, I agree with Wilmington that it does not violate constitutional due process when it requires the owners of impounded vehicles to pay their outstanding ticket fines and towing and storage fees before they can have a hearing on the merits of their parking citations.  *Accord Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1324 (9th Cir. 1982).  I will therefore dismiss Count V.

### C. Plaintiffs' Unlawful Takings and Excessive Fines Claims

In Count I, Plaintiffs allege that the scrapping of their cars violates the Fifth Amendment's Takings Clause.  D.I. 1 at 17–18.  In Count VI, they allege that the scrapping of their cars violates the Eighth Amendment's Excessive Fines Clause. D.I. 1 at 27–29.

The Fifth Amendment, as applied under the Fourteenth Amendment, prohibits a city from taking "private property . . . for public use, without just compensation."  U.S. CONST. amend. V.  A city, however, is "not . . . required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan*, 516 U.S. 442, 452 (1996).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII.  The amendment's Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (internal quotation marks and citation omitted).  "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality[.]" *Id.* at 334.  A fine, therefore, "must bear some relationship to the gravity of the offense that it is designed to punish." *Id.*  And a fine is unconstitutional "if it is grossly disproportional to the gravity of a defendant's offense." *Id.*

Wilmington argues that Plaintiffs' Takings Clause claim should be dismissed "[b]ecause Plaintiffs' vehicles were impounded pursuant to the City's police powers, and not taken for a public use . . . ." D.I. 16 at 17.  It argues that Plaintiffs' excessive fines claim should be dismissed because the scrapping of Plaintiffs' cars "was not a punishment imposed by the City" but "[r]ather . . . part of the statutory process by which towing contractors may recover their costs." D.I. 16 at 22.

Wilmington can't have it both ways.  If it impounded Plaintiffs' cars pursuant to its police powers, then Plaintiffs have a viable excessive fines claim, as

19

I cannot agree with Wilmington that the surplus value gained from scrapping Plaintiffs' cars was, as a matter of law, not grossly disproportionate to Plaintiffs' alleged parking violations.  If, on the other hand, Wilmington scrapped Plaintiffs' cars and retained the surplus value of those cars to pay for its towing contracts, then Plaintiffs have a stated a viable takings claim.

Accordingly, I will not dismiss Counts I and VI.

## IV.    CONCLUSION

For the reasons stated above, I will grant in part and deny in part Wilmington's motion to dismiss.  I will grant the motion with respect to Counts II, III, IV, and V.  I will deny the motion with respect to Counts I and VI.

The Court will issue an Order consistent with this Memorandum Opinion.